IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY BARAZZA,

    Petitioner,                  No. CIV S-02-1873 FCD CMK P

    vs.

JILL BROWN,

    Respondent.

FINDINGS AND RECOMMENDATION

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a 1998 judgment of conviction entered in the Sacramento County Superior Court after a jury found him guilty of kidnaping (Cal. Penal Code § 207) and sexual battery (Cal. Penal Code § 243.4) with a prior strike under California Three Strikes law (Cal. Pen. Code § 667(b)-(I)). Petitioner was sentenced to 15 years in state prison.

        For the reasons stated below, this court has determined that the petition for habeas corpus should be denied.

Procedural History[1]

        On May 20, 1999, and June 7, 1999, respectively, petitioner filed his Opening

---

[1] See Pet. at 3-4; Resp't's Answer at 2-3; Exs. 3 through 10.

1

Brief on Appeal and his Supplemental Brief. On January 22, 2001, the California Court of Appeal, Third Appellate District, affirmed petitioner's conviction and sentence.

On March 5, 2001, petitioner filed a petition for review in the California Supreme Court. The court denied review on April 11, 2001.

On August 15, 2001, petitioner filed a petition for writ of habeas corpus in Sacramento County Superior Court. The Superior Court denied the petition as procedurally barred for untimeliness, citing In re Clark, 5 Cal. 4th 750, 797 (1993).

On October 1, 2001, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal. On October 4, 2001, the court denied the petition without opinion.

On December 10, 2001, petitioner petitioned for writ of habeas corpus in the California Supreme Court. The court denied the petition without opinion.

Petitioner's petition is timely under AEDPA.

Factual Background[2]

>    The petitioner and the victim, Lorna B., had lived together for about two years, ending in December 1995. The petitioner was possessive, jealous, and physically abusive. After she moved out, he wanted her to come back, but she demanded that he get counseling to control himself. They continued to see each other, and the petitioner continued his physical abuse.
>
>    During the early morning hours of April 14, 1996, Lorna attended a party at her friend's house. After most of the others left the house to get something to eat, she and Hermes Ezrre went into a back room, where they kissed. Francisco Daniel was the only other person in the house, and he was in the living room. Lorna and Hermes laid down on a couch and went to sleep.
>
>    While Francisco was watching television in the living room, the petitioner entered the house without knocking. He asked where Lorna was, and Francisco told him she was in the back room. The petitioner went into the room where Lorna and Hermes were asleep. He kicked Hermes in the head, until Hermes fled.

---

[2] The facts of petitioner's crime are not in dispute. The summary of facts contained in the unpublished opinion of the California Court of Appeals are set forth as background to the discussion of petitioner's jury instruction claims. 28 U.S.C. § 2254(e)(1). For convenience the word "defendant" is substituted with the word "petitioner."

> The petitioner grabbed Lorna by the head and the hair, pulled her to the ground, punched her several times in the face, and dragged her out into the hallway.
>
> The petitioner picked up Lorna and carried her to a waiting car. They were driven to the petitioner's residence at the time, where Lorna had never been. As she was being carried, Lorna lost consciousness and then regained consciousness in the car during the trip to the petitioner's home. She cried and asked to be taken home. When they arrived at the petitioner's home, he carried her into the house and into his bedroom.
>
> After the petitioner put Lorna on his bed, he told her he was sorry and just wanted to be with her. The petitioner forcibly removed Lorna's clothes, while she repeatedly told him to stop. The petitioner kissed and fondled her breasts and vagina and inserted his finger and then his penis into her vagina.
>
> Eventually, the house was surrounded by police officers. Lorna fled the house, and the petitioner was arrested.
>
> The petitioner was tried by jury on charges of burglary, kidnaping, penetration with a foreign object, forcible oral copulation, and rape. The jury found the petitioner not guilty of burglary, and guilty of kidnaping and sexual battery (a lesser offense of the sexual offenses charged). The trial court found true the allegation that the petitioner had suffered a prior conviction for assault with force likely to produce great bodily injury and sentenced the petitioner to a total state prison term of 15 years.

(Resp't Answer at 6-7 and Exh. 4.)

Standard of Review

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. Engle v. Isaac, 456 U.S. 107, 119 (1982); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985). A federal writ is not available for alleged error in the interpretation or application of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).

Sections 2254 as amended in 1996 [3] sets forth the following standards of review

---

[3] The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 apply to all federal habeas corpus actions filed after April 26, 1996. See Lindh v. Murphy, 521 U.S. 320, 336 (1997).

3

to be applied by federal courts to state court decisions:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2). See Penry v. Johnson, 532 U.S. 782, 792-96 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

Analysis

I. Procedural Default

Counts one, two, and four, are each procedurally barred from review in federal court. "In a federal habeas action brought by a state prisoner, federal courts 'will not review a question of federal law decided by a state court if the decision of that courts rests on state law ground that is independent of the federal question and adequate to support the judgment.'" La Crosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). Where the application of a state procedural rule provides an adequate and independent state law basis on which the state court can deny relief and the rule prevents the state court from reaching the merits of a federal claim, the prisoner is procedurally barred from pursuing the claim in federal court. Coleman, 501 U.S. at 729-30; Y1st v. Nunnemaker, 501 U.S. 797, 801 (1991); Park v. California, 202 F.3d 1146, 1151 (9th Cir.), cert. denied, 531 U.S. 918 (2000). The procedural default rule may apply even if the state court applies a procedural rule and also rejects the merits of the defaulted claim. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Carriger v. Lewis, 971 F.2d 329, 333 (9th Cir. 1992) (en banc); Thomas v. Lewis, 945 F.2d 1119, 1123 (9th Cir. 1991).

First, the government must adequately plead the existence of an independent and adequate state procedural ground as an affirmative defense. Bennett v. Mueller, 322 F.3d 573, 586 (9th Cir. 2002). Then, the petitioner has the burden to place that defense in issue. Id. To satisfy his burden, the petitioner may allege facts that demonstrate the inadequacy of the state procedure. Id. However, the ultimate burden is on the government. Id. The court should ordinarily consider any procedural bar issues first. Lambrix v. Singletary, Jr., 520 U.S. 518, 525 (9th Cir. 1997).

In the present case, the Sacramento County Superior Court denied the petition as unjustifiably untimely under In re Clark, 5 Cal. 4th 750 (1993). In this petition, petitioner claimed insufficient evidence to support a guilty verdict, jury misconduct, perjury, insufficient evidence of his guilt of a prior serious conviction, and ineffective assistance of appellate counsel. Petitioner then filed a petition for writ of habeas in the Court of Appeal. The appellate court denied the petition without explanation. Petitioner then filed a petition in the California Supreme Court which was also denied the petition without explanation.

The court will presume "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same rest upon the same ground." Sandgathe v. F. Maass, 314 F.3d 371, 377 (9th Cir. 2002)(quoting Y1st v. Nunnemaker, 501 U.S. 797, 803 (1991)). The court will "look through" the unexplained decisions to the court's reasoned decisions absent "strong evidence" that this process would be improper. Id. "The maxim is that silence implies consent, not the opposite..." Y1st v. Nunnemaker, 501 U.S. 797, 804 (1991). Thus, this court will look-through the California Supreme Court and Appellate Court's silent denial to the California Superior Court's judgment.

Next, the respondent must establish that the bar under In re Clark is both adequate and independent of federal law. Federal courts concerned with comity and federalism, will refuse to review a habeas petition if the state court decision denying relief rests on a state law ground that is independent of federal law and adequate to support the judgment. Coleman v.

1  Thompson, 501 U.S. 722 (1991); Wood v. Hall, 130 F.3d 373, 376 (9th Cir. 1997); Poland v.
2  Stewart, 169 F.3d 573, 577 (9th Cir. 1999).
3        To be independent the state law ground must not be interwoven with federal law.
4  The Bennett Court prospectively held that the Robbins/Clark timeliness rule was not interwoven
5  with federal law and, as a result, independent. Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir.
6  2003).
7        Next, the issue is whether the Robbins/Clark timeliness rule is an adequate state
8  law ground. To determine if a state ground is adequate the court looks to the time at which the
9  petitioner had an opportunity to bring his claims on direct appeal. Fields v. Calderon, 125 F.3d
10 757, 763-64 (9th Cir. 1997). To foreclose federal judicial review, the state procedural rule must
11 be "well-established and consistently applied." Poland v. Stewart, 169 F.3d 573, 577 (9th Cir.
12 1999).
13       In Bennett, the court could not conclude whether denial based on Robbins/Clark
14 untimeliness constituted an adequate state law ground. Respondent contends that the petitioner
15 should still be procedurally barred because he has not met his burden of proof. As support,
16 respondent cites to the Tenth Circuit opinion adopted by the Bennett court; Hooks v. Ward, 184
17 F.3d 1206, 1217 (10th Cir. 1999). In describing which party bears the burden, the Hooks court
18 held the following:

> Once the state pleads the affirmative defense of an independent
> and adequate state procedural ground, the burden to place that
> defense in issue shifts to the petitioner. This must be done at a
> minimum, by specific allegations by the petitioner as to the
> inadequacy of the state procedure. The scope of the state's burden
> of proof thereafter will be measured by specific claims of
> inadequacy put forth by the petitioner.

Id. at 1216.

      In his traverse, petitioner simply concludes none of the cases cited by the
California Supreme Court are state procedural bars to the instant petition. The court is not

6

persuaded that the petitioner, by this simple allegation, has met his burden of placing the respondent's affirmative defense in issue.

II. Merits

Petitioner's petition should also be denied on the merits.

Count One: Insufficient Evidence/Jury Misconduct

Petitioner insufficiency of the evidence claim should also be denied because insufficient evidence should not be raised in a state court habeas action. In re Lindley, 29 Cal. 2d 709, 723 (1947); In re Adams, 14 Cal. 3d 629, 635 (1975). Simply put, this claim would have been denied on procedural grounds, even if it had been raised in a timely fashion.

The petitioner's jury misconduct claim also fails on the merits.[4] Petitioner's jury misconduct claim is based on three juror declarations. Juror number five did not believe defendant was guilty of kidnaping but changed his vote to guilty after the foreman stated that a hung jury would result in an expensive new trial. Jury number six claimed that she changed her vote to guilty also as a result of the foreman's statements, but also because that the other jurors yelled at her, and that she felt "belittled and brow beaten." The foreman also declared that he would "sit here until hell freezes over." Juror number ten declared that another juror was pounding on the table and yelling about a prepaid vacation she had the next day. Juror number ten also confirmed the foreman's statement regarding the expense of a new trial.

The California Court of Appeal found the fact that there was yelling and pounding on the table, the foreman's statements, and the juror's statement regarding her prepaid vacation, admissible to determine whether there was juror misconduct. The court based this finding on California Evidence Code § 1150(a) and In re Stakewitz 40 Cal.3d 391, 398 (1985).

California Evidence Code § 1150(a) states:

---

[4] On appeal, petitioner raised only state law to support his jury misconduct claims. Thus, any federal aspects of his jury misconduct claims are not exhausted under 28 U.S.C. § 2254(b)(1) and will not be considered by this court.

> Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined.

Cal. Evid. Code § 1550(a). Jurors may testify to "overt acts" but not "subjective reasoning processes of an individual juror." In re Stakewitz, 40 Cal.3d 391, 398 (1985). "[O]vert acts" include statements, conduct, conditions, and events that are obvious to the senses. Id.

In the present case, the appellate court found the fact that jurors felt pressure, or believed the defendant was not guilty of kidnaping, or changed their vote for certain reasons, was not admissible. The yelling and pounding on the table, the foreman's statement regarding staying there until a guilty verdict was reached, the juror's statement regarding her prepaid trip, all are insufficient to require the guilty verdict to be set aside. See People v. Keenan, 45 Cal.3d 478, 541-542 (1988). The appellate court even upheld the trial court's determination that the foreman's statement regarding the expense of a new trial was insufficient to impeach the verdict. Specifically, the appellate court held that the trial court properly concluded the jury was not likely to be influenced by the foreman's statement because the jurors were given an oath and the pertinent jury instructions. (See Resp't's Answer Exs. 3 at 5-8.) The state court's decision denying petitioner's jury misconduct claim was neither contrary to nor an unreasonable application of federal law as decided by the United States Supreme Court.

Thus, for the foregoing reasons, count one should be denied.

Count Two: Perjury

Petitioner's perjury claim can also be denied on the merits. In order to prevail on a perjury claim, petitioner must allege that the prosecution knowingly introduced the perjured testimony. Napue v. Illinois, 360 U.S. 264 (1959); Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002); Murtishaw v. Woodford, 255 F.3d 926, 959 (9th Cir. 2001). In the present case,

petitioner only makes an allegation that the prosecutor knew of the officer's alleged perjury. (<u>See</u> Petitioner's Traverse 19-21.) Petitioner provides nothing to support such allegation. (<u>Id</u>.)

Petitioner must also demonstrate that the statement made, was false. Inconsistent statements do not constitute a knowing use of perjured testimony. <u>U.S. v. Zuno-Arce</u>, 44 F.3d 1420, 1423 (9th Cir. 1995); <u>U.S. v. Necoechea</u>, 986 F.2d 1273, 1280 (9th Cir. 1993).

In the present case, Officer Leon's testified regarding the victim's inability to leave petitioner's home. Officer Leon's testimony recounted a conversation between the victim and her friend. Officer Leon testified that he heard the victim state that the petitioner was not letting her leave his home. (RT 495-496.) Petitioner contends that Officer Leon's testimony is false because she did not include the victim's statement in her report. However, the victim also testified that she stated she was not okay and requested that her friend come pick her up. Moreover, the victim testified that she asked the petitioner to take her home on at least two different occasions. Petitioner refused both requests. (RT 205, 210.) At one point, petitioner told the victim that she could go home in the morning. (RT 210.) Therefore, Officer Leon's testimony was not false, nor inconsistent with the testimony of the victim. For the foregoing reasons, Count Two should also be denied.

<u>Count Three: Prior Serious Conviction</u>

Petitioner contends that there is insufficient evidence to support a finding that his prior conviction qualified as a "strike" under California's Three Strikes Law. Assault with a deadly weapon does not constitute a "serious" felony for three strike purposes, unless the perpetrator used a firearm or personally inflicted great bodily injury. <u>See</u> Cal. Pen. Code § 1192.7(c).

In the present case, there is sufficient evidence to support the trial court finding petitioner's prior conviction "serious." A witness for the prosecution testified that because petitioner struck her, she had a broken jaw, was unconscious, and airlifted to the hospital. (RT 1858-1859, 1897; 1906.) The trial court noted that the petitioner pled guilty to assault with great

bodily injury.  (RT 11979-11981.)  Thus, Count three should be denied as meritless.  See Jackson v. Virginia, 443 U.S. 307 (1979); People v. Johnson, 26 Cal. 3d 557, 575-78 (1980).

<u>Count Four:  Ineffective Assistance of Appellate Counsel</u>

Petitioner's claim of ineffective assistance of appellate counsel should also be denied on the merits.

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  <u>Strickland</u>, 466 U.S. at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  <u>Id</u>. at 690.  The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  <u>Id</u>.  "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  <u>Hughes v. Borg</u>, 898 F.2d 695, 702 (9th Cir. 1990) (citing <u>Strickland</u>, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice.  <u>Strickland</u>, 466 U.S. at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id</u>. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  <u>Id.</u>; <u>see</u> <u>also</u> <u>Williams v. Taylor</u>, 529 U.S. at 391-92; <u>Laboa v. Calderon</u>, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . . that course should be followed."  <u>Pizzuto v. Arave</u>, 280 F.3d 949, 955 (9th Cir. 2002) (quoting <u>Strickland</u>, 466 U.S. at 697).

1    The Strickland standards apply to appellate counsel as well as trial counsel. Smith
2 v. Robbins, 528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v.
3 Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  However, an indigent defendant "does not have a
4 constitutional right to compel appointed counsel to press nonfrivolous points requested by the
5 client, if counsel, as a matter of professional judgment, decides not to present those points."
6 Jones v. Barnes, 463 U.S. 745, 751 (1983).  Counsel "must be allowed to decide what issues are
7 to be pressed." Id.  Otherwise, the ability of counsel to present the client's case in accord with
8 counsel's professional evaluation would be "seriously undermined." Id.  See also Smith v.
9 Stewart, 140 F.3d 1263, 1274 n.4 (9th Cir.), cert. denied, 525 U.S. 929 (1998) (counsel not
10 required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly
11 good appellate advocacy.")  Further, there is, of course, no obligation to raise meritless arguments
12 on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a showing of deficient
13 performance as well as prejudice).  Thus, counsel is not deficient for failing to raise a weak issue.
14 See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this context, petitioner must
15 demonstrate that, but for counsel's errors, he probably would have prevailed on appeal.  Miller,
16 882 F.2d at 1434 n.9.

17    Here, petitioner contends his appellate counsel was ineffective for failing to raise
18 his insufficient evidence claim regarding his "strike" conviction.  As previously stated, there was
19 sufficient evidence to find petitioner guilty of a "strike."   Therefore, petitioner's fourth claim
20 fails because it would have been futile for appellate counsel to raise this claim.

21 Conclusion

22    IT IS HEREBY RECOMMENDED THAT the petitioner's petition for writ of
23 habeas corpus be DENIED.

24    These findings and recommendations are submitted to the United States District
25
26 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within five days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 15, 2005.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE